## BRIG PENOBSCOT

1813.

*Feb.* 22d,

*v.*

## THE UNITED STATES.

*Absent....*TODD, *J.*

Under the non-intercourse law, a vessel, in March, 1811, had no right to come into the waters of the U. S. to inquire whether she might land her cargo.

THIS was an appeal from the sentence of the Circuit Court of the district of Georgia, which affirmed that of the District Court, condemning the brig Penobscot, and her cargo of salt, for a violation of the acts of Congress, interdicting commercial intercourse with Great Britain and her dependencies, *(viz. the acts of March 1st, 1809, vol. 9, p. 243.—May 1st, 1810, vol. 10, p. 186.—The President's proclamation of Nov. 2d, 1810, and the act of 2d March, 1811, p. 346.)* By the 4th section of the act of March 1st, 1809, it was not lawful to import into the United States, or the territories thereof, any goods, wares, or merchandize *whatever,* from any port or place situated *in Great Britain, or Ireland, or in any of the colonies or dependencies of Great Britain, nor from any port or place in the actual possession of Great Britain ;* nor to import into the United States, &c. from any foreign port or place *whatever,* any goods, wares, or merchandize of the *growth, produce, or manufacture of Great Britain, or Ireland, &c.*

*By the 5th section,* such goods so imported, (or put on board any vessel, &c. *with intent* of importing, &c.) as

well as all other articles on board, belonging to the
same owner, are liable to forfeiture : And by the *6th
section*, the vessel is subject to forfeiture, if the goods are
laden on board with the knowledge of the owner or
master of the vessel.

The act of May 1st, 1810, and the President's proclama-
tion of Nov. 2d, 1810, announcing that France had so
revoked the *edicts of Berlin* and *Milan,* as that they
ceased to violate the neutral commerce of the United
States :—And the act of March 2d, 1811, are only re-
ferred to, as reviving and enforcing against Great Bri-
tain, the provisions of the act of March 1st, 1809.

The claim of the owners of the vessel and cargo,
stated, that the vessel sailed from Antigua on the 12th of
February, 1811, and being *crank and not sea-wor-
thy,* put into Turk's Island, for ballast, where she took
in a load of salt, being informed, by an American vessel,
that there was no law to prohibit it. That she sailed
from Turk's Island, for the port of *Savannah,* intending to
stand off and on, to get information to know whether she
might be permitted to come in or not. That on her ap-
proach to the harbor, a gale of wind prevented boats
coming to her, and forced her, for the safety of the lives
of the crew and the vessel, to make a harbor at Cock-
spur Island. That before she got a harbor, she was
boarded by a revenue cutter, who took possession of
her, and forcibly carried her into port. That the salt was
not taken in with intent to violate the laws of the
United States, but with the express intention and deter-
mination, if they found the importation into the United
States to be unlawful, to bear away to some foreign port.
She sailed from Castine, in the province of Maine, for
Antigua, in December, 1810, and arrived off Savan-
nah, on the 15th of *March,* 1811.

There was evidence that the vessel might have called
at *Amelia Island,* in the course of her voyage, where
she might have got information of the non-intercourse
law being in force. That she spoke a vessel of the U.
S. just before she came in, but made no inquiry as to the
law. That the agent of the owners wrote several let-
ters to be delivered to the captain at sea, informing him
of the law, and warning him to go to some foreign
port, but they were not delivered. The evidence re-

<div style="margin-left:auto">BRIG<br>PENOB-<br>SCOT<br>v.<br>U. STATES.</div>

specting the necessity of coming in, by reason of stress of weather, did not seem to be sufficiently proved.

The cause was argued by P. B. KEY, *for the Appellants,* and I. R. INGERSOLL, for the U. S. *

It was contended by KEY, *for the Appellants,*

1. That the cargo was not taken on board with intention of importing the same into the United States.

2. That the vessel was forced into *Cockspur Harbor,* by stress of weather, to save the vessel and the lives of the crew; and while so making the harbor, she was boarded by a revenue cutter, and seized, and forced into the port of Savannah.

3. That she had a right to come into the waters of the U. S. to make inquiry whether she could be permitted to enter, and before a reasonable time had expired, she was forcibly seized and carried in.

4. That coming into the waters of the U. States, under either of the above circumstances, does not constitute an *importation,* without other and further voluntary acts on the part of the vessel.

*Feb. 23....*MARSHALL, *Ch. J.* stated the opinion of the Court to be, that the vessel came at her peril; that she was bound to get information; but was negligent in not calling at *Amelia Island,* and in not inquiring of the vessel which she spoke off the port of Savannah.

*Sentence affirmed.*