11 U.S. 356
 7 Cranch 356
 3 L.Ed. 369
 BRIG PENOBSCOT
v.
THE UNITED STATES.
 February 22, 1813
 
 1
 Absent. TODD, J.
 
 
 2
 THIS was an appeal from the sentence of the Circuit Court of the district of Georgia, which affirmed that of the District Court, condemning the brig Penobscot, and her cargo of salt, for a violation of the acts of Congress, interdicting commercial intercourse with Great Britain and her dependencies, (viz. the acts of March 1st, 1809, vol. 9, p. 243.—May 1st, 1810, vol. 10, p. 186.—The President's proclamation of Nov. 2d, 1810, and the act of 2d March, 1811, p. 346.) By the 4th section of the act of March 1st, 1809, it was not lawful to import into the United States, or the territories thereof, any goods, wares, or merchandize whatever, from any port or place situated in Great Britain, or Ireland, or in any of the colonies or dependencies of Great Britain, nor from any port or place in the actual possession of Great Britain; nor to import into the United States, &c. from any foreign port or place whatever, any goods, wares, or merchandize of the growth, produce, or manufacture of Great Britain, or Ireland, &c.
 
 
 3
 By the 5th section, such goods so imported, (or put on board any vessel, &c. with intent of importing, &c.) as well as all other articles on board, belonging to the same owner, are liable to forfeiture: And by the 6th section, the vessel is subject to forfeiture, if the goods are laden on board with the knowledge of the owner or master of the vessel.
 
 
 4
 The act of May 1st, 1810, and the President's preclamation of Nov. 2d, 1810, announcing that France had so revoked the edicts of Berlin and Milan, as that they ceased to violate the neutral commerce of the United States:—And the act of March 2d, 1811, are only referred to, as reviving and enforcing against Great Britain, the provisions of the act of March 1st, 1809.
 
 
 5
 The claim of the owners of the vessel and cargo, stated, that the vessel sailed from Antigua on the 12th of February, 1811, and being crank and not sea worthy, put into Turk's Island, for ballast, where she took in a load of salt, being informed, by an American vessel, that there was no law to prohibit it. That she sailed from Turk's Island, for the port of Savannah, intending to stand off and on, to get information to know whether she might be permitted to come in or not. That on her approach to the harbor, a gale of wind prevented boats coming to her, and forced her, for the safety of the lives of the crew and the vessel, to make a harbor at Cockspur Island. That before she got a harbor, she was boarded by a revenue cutter, who took possession of her, and forcibly carried her into port. That the salt was not taken in with intent to violate the laws of the United States, but with the express intention and determination, if they found the importation into the United States to be unlawful, to bear away to some foreign port. She sailed from Castine, in the province of Maine, for Antigua, in December, 1810, and arrived off Savannah, on the 15th of March, 1811.
 
 
 6
 There was evidence that the vessel might have called at Amelia Island, in the course of her voyage, where she might have got information of the non-intercourse law being in force. That she spoke a vessel of the U. S. just before she came in, but made no inquiry as to the law. That the agent of the owners wrote several letters to be delivered to the captain at sea, informing him of the law, and warning him to go to some foreign port, but they were not delivered. The evidence respecting the necessity of coming in, by reason of stress of weather, did not seem to be sufficiently proved.
 
 
 7
 The cause was argued by P. B. KEY, for the Appellants. and I. R. INGERSOLL, for the U. S.*
 
 
 8
 It was contended by KEY, for the Appellants,
 
 
 9
 1. That the cargo was not taken on board with intention of importing the same into the United States.
 
 
 10
 2. That the vessel was forced into Cockspur Harbor, by stress of weather, to save the vessel and the lives of the crew; and while so making the harbor, she was boarded by a revenue cutter, and seized, and forced into the port of Savannah.
 
 
 11
 3. That she had a right to come into the waters of the U. S. to make inquiry whether she could be permitted to enter, and before a reasonable time had expired, she was forcibly seized and carried in.
 
 
 12
 4. That coming into the waters of the U. States, under either of the above circumstances, does not constitute an importation, without other and further voluntary acts on the part of the vessel.
 
 Feb. 23.
 
 13
 MARSHALL, Ch. J. stated the opinion of the Court to be, that the vessel came at her peril; that she was bound to get information; but was negligent in not calling at Amelia Island, and in not inquiring of the vessel which she spoke off the port of Savannah.
 
 
 14
 Sentence affirmed.
 
 
 
 *
 The Reporter was absent.